IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:24-cv-00203-MR

| | |
|---|---|
| BETH A. ROBINSON, ) <br> ) <br>           Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> FRANK J. BISIGNANO, ) <br> Commissioner of Social Security, ) <br> ) <br>           Defendant. ) <br> _____ ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's appeal of the Commissioner's decision denying her benefits. The parties have fully briefed the issues. [Docs. 7, 10, 11].

**I.     BACKGROUND**

On March 19, 2021, Beth Robinson (the "Plaintiff") applied for disability and disability insurance benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of March 16, 2021. [Transcript ("T.") at 10]. The Plaintiff's request was initially denied on June 21, 2021, and upon reconsideration on September 8, 2021. [Id.]. On the Plaintiff's request, a hearing was held on May 17, 2022 before an Administrative Law Judge ("ALJ"). [Id.]. On June 6, 2022, the ALJ issued a written decision denying

the Plaintiff benefits, finding that the Plaintiff was not disabled within the meaning of the Act since the alleged onset date of March 16, 2021. [Id. at 7]. On November 18, 2022, the Appeals Council denied the Plaintiff's request for review. [Id. at 1-3]. The Plaintiff then filed a complaint in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

On July 31, 2023, this Court remanded the Plaintiff's claim. [T. at 543]. On October 20, 2023, the Appeals Council entered an order remanding her claim to an ALJ. [Id. at 545]. On April 2, 2024, a hearing was held before the ALJ. [Id. at 486]. On May 9, 2024, the ALJ issued a written decision denying the Plaintiff benefits. [Id. at 466]. The Plaintiff did not file written exceptions to the decision nor did the Appeals Council assume jurisdiction under 20 C.F.R. § 404.984(c). Thus, the ALJ's decision is the Commissioner's final decision. See id. § 404.984(a). On August 7, 2024, the Plaintiff filed her complaint in this Court. [Doc. 1].

The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the

Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citation modified). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citation modified).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (citation modified). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (citation modified). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ

3

to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

### III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200,

1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. § 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's

5

Case 1:24-cv-00203-MR    Document 12    Filed 09/29/25    Page 5 of 16

ability to perform work-related functions. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520, 416.920. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering his burden at step five, the claimant is not disabled and the application for benefits must be denied. 20 C.F.R. §§ 404.1520, 416.920. Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since her alleged onset date of March 16, 2021. [T. at 472]. At step two, the ALJ found that the Plaintiff has the following severe impairments: degenerative disc disease, arthritis, obesity, migraines, and anxiety disorder. [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id. at 472-74]. The ALJ then determined that the Plaintiff's RFC, notwithstanding her impairments, allowed her to

> perform light work as defined in 20 CFR 404.1567(b) except she can frequently climb ramps/stairs; occasionally climb ladders, ropes, and scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. She can work at no more than a moderate noise intensity level (such as light traffic or a department store). In addition, she can perform simple tasks with customary breaks. She can understand, remember, and carry out simple instructions and maintain concentration, persistence, and pace on those types of tasks for two hour periods over the course of an 8 hour workday.

[Id. at 474].

At step four, the ALJ found that the Plaintiff is unable to perform any past relevant work. [Id. at 478]. At step five, based upon the testimony of the vocational expert, the ALJ concluded that, considering the Plaintiff's age,

education, work experience, and RFC, the Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including garment sorter, mail clerk, and housekeeping cleaner. [Id. at 478-79]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from the alleged onset date, March 16, 2021, through the date of the decision, May 9, 2024. [Id. at 479].

## V. DISCUSSION[1]

In this appeal, the Plaintiff contends that the ALJ failed to properly discuss and evaluate the evidence of record related to the Plaintiff's mental limitations, and that the ALJ failed to explain how he reconciled certain contradictory evidence with the mental limitations found in the Plaintiff's RFC. [See Doc. 7 at 7]. This incomplete analysis, the Plaintiff contends, led to an incomplete or inaccurate assessment of her abilities, which in turn results in the frustration of meaningful review and in an unsubstantiated RFC. [Id.].

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and

---

[1] Rather than set forth the relevant facts in a separate section, the Court has incorporated the relevant facts into its legal analysis.

assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[2] SSR 96-8p; see also Mascio, 780 F.3d at 636 (finding that remand may be appropriate when an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

When a plaintiff's claim is based in whole or in part on mental health impairments, the Social Security Rules and Regulations require an in-depth review and analysis of the plaintiff's mental health history. The Regulations make plain that "[p]articular problems are often involved in evaluating mental impairments in individuals who have long histories of . . . prolonged outpatient care with supportive therapy and medication." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E. The Regulations, therefore, set forth a mechanism for this type of review and documentation, known as the "special technique," to assist ALJs in assessing a claimant's mental RFC. See SSR 96-8p; 20 C.F.R. §§ 404.1520a, 416.920a.

---

[2] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)"; (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting"; and (3) other work-related abilities affected by "impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945(b)-(d).

The special technique "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings." SSR 96-8p. Paragraph B of the listings provides the functional criteria assessed, in conjunction with a rating scale, to evaluate how a claimant's mental disorder limits her functioning. These criteria represent the areas of mental functioning a person uses in the performance of gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A. The criteria are: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." Id. The ALJ uses the special technique to "evaluate the severity of mental impairments . . . when Part A of the Listing of Impairments is used." 20 C.F.R. § 404.1520a(a).

> Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)[.] If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings[.]

20 C.F.R. § 404.1520a(b)(1). With regard to mental health issues, "[t]he determination of mental RFC is crucial to the evaluation of your capacity to

do [substantial gainful activity] when your impairment(s) does not meet or equal the criteria of the listings, but is nevertheless severe." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A. The RFC assessment is formulated in light of a claimant's physical and mental impairments. Rule 96-8p provides:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

SSR 96-8p. Rule 96-8p further explains as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

Id. "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id.

11

Case 1:24-cv-00203-MR    Document 12    Filed 09/29/25    Page 11 of 16

In this case, the ALJ failed to conduct any function-by-function analysis of the Plaintiff's mental health limitations and work-related abilities prior to expressing his RFC assessment. [See T. at 473-74]. At step three, the ALJ decided that the Plaintiff's mental impairments did not meet or medically equal the "Paragraph B" criteria[3] in listing 12.06 (anxiety and obsessive-compulsive disorders). The ALJ based this on findings regarding the Plaintiff's limitations and difficulties relative to understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. [Id.]. The ALJ then noted:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. *The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment*. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

[Id. at 474 (emphasis added)].

---

[3] Paragraph B of these listings provides the functional criteria assessed, in conjunction with a rating scale, to evaluate how a claimant's mental disorder limits his or her functioning. These criteria represent the areas of mental functioning a person uses in a work setting. They are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. § 404, Appendix 1 to Subpart P, § 12.00(A).

The ALJ found at step three that the Plaintiff suffers from mild limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in concentration, persistence, or pace; and mild limitations in adapting or managing oneself. [Id. at 473-74]. These findings indicate that there are limitations on the Plaintiff's ability to carry out the areas of mental functioning listed in paragraph B. In formulating the Plaintiff's RFC, however, the ALJ failed to explain whether these limitations translated to any actual functional limitations. It appears the ALJ sought to account for the Plaintiff's "moderate limitation" in the area of concentration, persistence, and pace by finding in the RFC that the Plaintiff:

> [C]an perform simple tasks with customary breaks. She can understand, remember, and carry out simple instructions and maintain concentration, persistence, and pace on those types of tasks for two hour periods over the course of an 8 hour workday.

[Id. at 474].

This, however, begs the question. The ALJ failed to explain how the Plaintiff's mental impairments impact the Plaintiff's mental *functioning* in concentration, persistence, and pace. While the ALJ determined what functions he believes the Plaintiff can perform, "his opinion is sorely lacking in the analysis needed for [the Court] to review meaningfully those

conclusions." Mascio, 780 F.3d at 636-37. Further, while the ALJ's decision recites certain evidence of record, the ALJ failed to describe "how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p; Mascio, 780 F.3d at 636.

A reviewing court cannot be "left to guess about how the ALJ arrived at his conclusions on [a plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended." Mascio, 780 F.3d at 637. It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189 (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills, 2017 WL 957542, at *4 (citation omitted).

As such, the Court must remand the case on this ground so that the ALJ may comply with the proper procedure for assessing the Plaintiff's mental impairments *before* expressing an RFC determination. See Mascio, 780 F.3d at 636; Patterson v. Comm'r Soc. Sec. Admin., 846 F.3d 656, 659, 662 (4th Cir. 2017) ("[T]he weight of authority suggests that failure to properly

14

Case 1:24-cv-00203-MR    Document 12    Filed 09/29/25    Page 14 of 16

document application of the special technique will rarely, if ever, be harmless because such failure prevents, or at least substantially hinders, judicial review.").

## VI. CONCLUSION

Because this Court lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling. See Radford, 734 F.3d at 295. Upon remand, the ALJ must perform a function-by-function analysis of the Plaintiff's mental limitations and work abilities, and thereafter "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189. The ALJ's analysis should include a narrative assessment describing how the evidence supports each conclusion, as required by SSR 96-8p, accounting for the Plaintiff's limitations in understanding, remembering, or applying information; interacting with others; concentration, persistence or pace; and adapting or managing oneself, if any, including an assessment of whether the Plaintiff can perform work-related tasks for a full work day. See Scruggs v. Colvin, No. 3:14-cv-00466-MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) (applying Mascio to find an ALJ must not only provide an explanation of how a plaintiff's mental limitations affect his ability to perform work-related functions, but also his ability to perform them for a full workday).

In light of this decision, the Plaintiff's other assignment of error need not be addressed at this time but may be addressed by her on remand.

## ORDER

**IT IS, THEREFORE, ORDERED** that, pursuant to the power of this Court to enter judgment affirming, modifying, or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED,** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Signed: September 29, 2025

Martin Reidinger
Chief United States District Judge